BUTTRILL et al. v. STANFIELD et al.

No. 32298. March 25, 1947.

*178 P. 2d 889.*

Everest, McKenzie & Gibbens, of Oklahoma City, for plaintiffs in error.

Schwoerke & Schwoerke, of Oklahoma City, for defendants in error.

GIBSON, J. Defendants in error instituted this action against plaintiffs in error to judicially establish and quiet their title to an implied easement for passageway over land owned by the defendants. Plaintiffs were awarded judgment, and it is therefrom defendants appeal.

For reversal it is urged (1) the court erred in the admission of testimony, and (2) that the findings and judgment of the court are contrary to the law and the evidence.

The premises involved are lots 12 and 13 of the Capitol Courts Addition to Oklahoma City, which are contiguous, and an unplatted area that adjoins said lot 12. The lots and the unplatted area face south on 23rd street. The lots have a frontage of 25 feet each and the unplatted area a frontage of 100 feet, and all have a common depth of 160 feet.

During 1934 Eddy Walls became the owner of the entire premises, which were then unimproved. In that year she erected a building near the south-east corner of the acreage lot and another on the southwest corner thereof. Between these buildings there was a space of about 8½ feet. This space was paved with concrete and used as a passageway. The passage extended to the rear of the buildings, thence making a U turn westward and coming south to 23rd street west of said building near the southwest corner. Thereafter, in 1938, said owner erected a building on lots 12 and 13. This last mentioned building, beginning with a common wall with the building in the southeast corner of the unplatted area, extended eastward making a solid frontage on 23rd street from the driveway to the east line of lot 13.

In September, 1939, the owner conveyed the entire premises to Local Federal Savings & Loan Association. Thereafter, on January 11, 1943, the association conveyed, by general warranty deed, to E. C. Stanfield and Burnette Stanfield, defendants in error, lots 12 and 13 and the east 48 feet of the unplatted area, and on November 10, 1943, conveyed the west 52 feet of the area to Martin L. Buttrill and Olin H. Buttrill, plaintiffs in error. The west wall of the building on the east 48 feet lies one-tenth of a foot east of the west line of the lot and hence the driveway alongside lies almost entirely on the lot granted to the Buttrills.

Concerning the character of the buildings and of the drive, the use thereof and knowledge of the conditions, the court found, among other things, as follows:

"The property immediately to the east of the driveway owned by plaintiffs is known as No. 1411. The property to the west of the driveway owned by the defendants is known as No. 1409. The building on plaintiffs' property next to the driveway is a one-story brick business building with living quarters in the rear. On its west side and opening from it onto the driveway are four large windows and a door. The building on defendants' property is partially one story and partially a two-story brick

structure, used for business in the front portion and for dwellings in the rear. On its east side are eight large windows. These buildings constructed by the Harwicks are substantial and permanent structures. The driveway is a well built concrete way covering the ground between numbers 1409 and 1411 and then curving westerly about the rear of defendants' building and southwardly on the west side thereof to 23rd Street.

"This was substantially the condition of the buildings, etc., when in January, 1943, the plaintiffs bought No. 1411, the east property, and the other storemans (sic) to the east, and in November, 1943, when defendants bought No. 1409, the west property. . . .

"The driveway was used as a way of convenience for the ingress and egress of cars, pedestrians, etc., and a means of light and air to both buildings while these properties were held by the original owner and builder, the Harwicks and the defendant association, and from the time of the purchase by the parties until September, 1944, when the defendant Buttrill claimed to have the exclusive right to the use of the driveway and, as plaintiff testified, announced his intention of closing it. This suit was then filed. . . .

"Both parties had knowledge at the time they purchased of the nature and structure of these buildings and the manner of their use. It was clear, apparent and obvious that this driveway was erected and intended to serve both properties in a permanent and continuous manner and was and is reasonably necessary for their use and enjoyment. This case falls clearly within the provisions of many cases of our own and other courts. See Curry v. Southwall Corporation, 192 Okla. 590, 138 P. 2d 528."

The court's findings of fact are fully supported by the evidence.

The testimony to which objection was made was that bearing upon the construction of the buildings and the driveway, the need for and the use made of the latter prior to the time of the grants from the association to plaintiffs and its codefendants, respectively.

The basis of the objection is that previous to the sales by the association no easement could have arisen by reason of the existing unity of title, that implied easement rested upon implied intent to be gathered from the circumstances surrounding the conveyances, and therefore "Things that happened prior to the severance are not justified facts on which an implied easement should rest."

The propositions of law as stated are correct, but the conclusion is incorrect. The fallacy of the conclusion sought to be drawn is met by our holding in Waken et al. v. Gillespie, 153 Okla. 78, 4 P. 2d 1028:

"No easement exists so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts, but, the moment a severance occurs by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases and easements or servitudes are created corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence, if instead of a benefit conferred a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with a servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."

It follows from this that testimony concerning the conditions which theretofore obtained is clearly pertinent and its admission affords no basis for the alleged error.

The situation in the instant case is controlled by Curry v. Southwall Corporation, 192 Okla. 590, 138 P. 2d 528, wherein we held, in effect, that where owner of adjoining lots so employs one of them that the other derives continuous, permanent and apparent benefit from first lot and sells lot in favor of

which such quasi easement exists, such easement, being necessary to reasonable enjoyment of property granted, passes to grantee by implication.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, and ARNOLD, JJ., concur.

